## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## EASTERN DIVISION

### No. 4:12-CV-97-FL

| | |
|---|---|
| DIANA L. NELSON, | ) |
| | ) |
| Claimant, | ) |
| | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-25, DE-29] pursuant to Fed. R. Civ. P. 12(c). Claimant Diana Nelson ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on August 30, 2007, alleging disability beginning June 30, 2007. (R. 16). Both claims were denied initially and upon reconsideration. (R. 16). A video hearing before the Administrative Law Judge ("ALJ") was held on February 19, 2010, at which time Claimant proceeded without the assistance of counsel

and a medical expert ("ME") and a vocational expert ("VE") appeared and testified.[1] (R. 16). On April 30, 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 23). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 11), and submitted additional evidence as part of her request (R. 7). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on March 19, 2012. (R. 1-6). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171,

---

[1]     A hearing before the ALJ was initially scheduled for October 20, 2009. Claimant appeared at the hearing, but the ALJ postponed the hearing to gather additional medical records. (R. 68-71).

176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3),

3

416.920a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to pose a hypothetical that adequately reflected Claimant's RFC; (2) failure to fully develop the record; (3) improper assessment of Claimant's credibility; and (4) improper examination of Claimant by ME during hearing. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") [DE-26] at 1-2.

## FACTUAL HISTORY

### I.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 18). Next, the ALJ determined Claimant had the following severe impairments: migraine headaches, fibromyalgia/chronic pain syndrome, major depression, personality disorder, and substance abuse. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitation in her activities of daily living, moderate difficulties in social functioning and moderate difficulties in maintaining concentration, persistence and pace with no episodes of decompensation of extended duration. (R. 19).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] with the following limitations: only simple, routine, repetitive tasks,

---

[2]     Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the

4

low-stress work, no team work, generally being alone to work by herself and reporting to one supervisor. (R. 19). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 19-21). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as an administrative assistant and accounting clerk. (R. 22). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 22-23).

## II.    Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 46 years old and unemployed. (R. 35). Claimant is a high school graduate and has obtained an Associate's Degree. (R. 35). Claimant was last employed with Lions Industries for the Blind as an administrative assistant for approximately eighteen months. (R. 36, 39). Claimant's past work experience also includes previous work as an administrative assistant and other office work. (R. 36-40).

Claimant explained numerous medical conditions support her disability claim and her inability to work full-time. Claimant testified that she is unable to work due to panic attacks, depression, migraines, and fibromyalgia. (R. 37-39, 49). Claimant testified that she began having episodes of panic attacks in 1999 which flare up periodically. (R. 37). Claimant testified that she

time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

has attended monthly therapy at PORT Human Services since 2007. (R. 40). At her visits, Claimant testified that she sees a psychiatrist for her medications and sees a therapist for counseling. (R. 40). Claimant testified that she is currently prescribed Pristiq, Abilify, and Xanax by her psychiatrist. (R. 40). Claimant testified that she is prescribed Hydrocodone, Lyrica, MS Contin, and Darvocet to treat her fibromyalgia pain. (R. 41). Claimant testified that she suffers from migraine headaches once every two to three months which require her to remain in bed. (R. 49). Claimant testified that Darvocet helps to relieve the migraine, but on occasion she has received injections to treat her migraines. (R. 49).

Claimant testified that she does not sleep well, is exhausted in the morning, and generally fatigued. (R. 41). Claimant testified that it is difficult to function on a day-to-day basis not knowing what condition she will be in due to her fibromyalgia. (R. 49). Claimant testified that she wakes up around five o'clock each morning, takes her medication and stretches her muscles. (R. 42). She immediately makes her bed when she gets up. (R. 41). Claimant testified that she does some cleaning in her home each day, but is only able to clean about one room or space before she is exhausted. (R. 42). For example, Claimant testified she may clean the bathroom one day which includes scrubbing the sink, toilet, and tub, but then she stops because she is exhausted. (R. 42). Claimant testified that she does not leave her home unless necessary and largely relies on other individuals to run errands for food and other necessities. (R. 41). Claimant testified that if she needs something, she goes to the store during the night to avoid crowds. (R. 53). Claimant testified she drives herself to her medical appointments and prepares her own meals. (R. 41, 46). Claimant testified that she participates in Relay for Life by attending monthly meetings and by making phone calls to businesses to raise donations. (R. 43). Her grandson also comes over to her house regularly

6

to play a bowling video game with Claimant. (R. 43). In the evenings, Claimant testified she generally watches television. (R. 44).

Claimant testified that she can only sit for a short period of time of about thirty minutes before she experiences discomfort and needs to move around or adjust. (R. 48). Claimant testified she has received Cortisone shots in her back which helps with the discomfort. (R. 48). Claimant testified she has difficulty standing and has difficultly adjusting her stance and right leg to begin walking once she stands up. (R. 48). Claimant testified that when she is in a good state of mind, she is able to walk for exercise for about twenty minutes. (R. 48). Claimant also testified that she has difficulty lifting, but that she is able to pull her three year-old grandson onto her lap from a seated position. (R. 49).

Upon being questioned by the medical expert, Claimant testified that she underwent hospitalization in October 2009 for suicidal thoughts. (R. 51). Claimant testified that she was being stalked by her ex-boyfriend and spending time in court as a result of the situation. (R. 51). Claimant testified that she communicates with her ex-boyfriend and the stalking started years back. (R. 51). Claimant testified that she does not use cocaine and stopped using marijuana in September 2007. (R. 52). Claimant also testified that she does not abuse her prescription for Xanax. (R. 53).

## III. Medical Expert's Testimony at the Administrative Hearing

Nathan Stahl, a medical doctor, testified as a ME at the administrative hearing. (R. 50). The ALJ asked the ME to describe Claimant's medical conditions. (R. 54). The ME testified that the two physical conditions Claimant suffered from include migraine headaches on a fairly infrequent basis and fibromyalgia which causes muscle aches and pains. (R. 54-55). The ME further testified that Claimant is on medications to treat her fibromyalgia which are helpful. (R. 55-57). With

7

respect to mental conditions, the ME testified that Claimant has been diagnosed with major depressive disorder which is exacerbated by stressors and is mostly stress-related. (R. 55). He noted further that Claimant has dealt with a stalker for the past three years that has prompted an increased level of stress and increased level of depression demonstrating the depression is stress-related. (R. 55). The ME also testified that Claimant is diagnosed with borderline personality disorder which is a chronic difficultly with relationships. (R. 56). According to the ME, this may cause difficultly in dealing with other people in the work place. (R. 57). The ME testified the personality disorder is typically unstable under stress and goes along with the depression. (R. 56). The ME concluded that despite Claimant's mental health problems, she could perform simple, repetitive, routine tasks with the limitations that she work in a low-stress environment, work alone, and report to a single supervisor. (R. 57-58).

## IV.    Vocational Expert's Testimony at the Administrative Hearing

Sandra Wells-Brown testified as a VE at the administrative hearing. (R. 59). After the VE's testimony regarding Claimant's past work experience (R. 60), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed four hypothetical questions. First, the ALJ asked what jobs the hypothetical person could perform assuming the individual has the capacity to perform medium work with limitations including simple, routine, repetitive tasks, a low-stress environment, working alone, and reporting to one supervisor. (R. 60-61). The VE responded the individual could perform jobs such as cleaning positions (DOT# 323.687-010), supply worker (DOT# 319.687-010), and hand packer (DOT# 920.587-018). (R. 61). The VE indicated that this listing of jobs was representative, not exhaustive. (R. 61). Next, the ALJ asked what positions would be available if the hypothetical individual were only capable of

8

performing light work.[3] (R. 62). The VE responded that the positions of cleaning (DOT# 323.687-014), assembly (DOT# 701.687-010), and router (DOT# 222.587-038) would be available. (R. 62). Third, the ALJ asked the VE whether any positions would be available for sedentary work with the "same additional limitations." (R. 62). The VE responded that the positions of document preparer (DOT# 249.587-018) and addresser (DOT# 209.587-010) would be available. Finally, the ALJ asked whether positions would be available if the individual were limited to sitting for thirty minutes and standing for thirty minutes, had difficultly lifting, and would be absent from work five days per month. (R. 63). The VE responded that the individual could not sustain competitive employment. (R. 64).

## DISCUSSION

### I. The ALJ properly developed the record.

Claimant contends the ALJ failed to fully develop the record by not obtaining Claimant's hospital records from October 2009 and not obtaining medical records from the time period between the administrative hearings. Pl.'s Mem. at 6. Defendant contends that the ALJ fulfilled his duty to fully develop the record, but to the extent he did not, there has been no prejudice to Claimant. Defs.' Mem. Supp. Defs.' Mot. J. Pleadings ("Defs.' Mem.") [DE-30] at 19.

The ALJ has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record, and cannot rely on the evidence submitted by the claimant when that evidence is inadequate. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). This is especially

---

[3]     The transcript regarding this hypothetical reads as follows: "Well, let me change the hypothetical. What if I concluded that Ms. Nelson was only capable of light work [INAUDIBLE]." Claimant argues that the VE's response to this hypothetical is not relevant because parts of the hypothetical are inaudible. Pl.'s Mem. at 4-5. The court addresses this contention below.

9

true in the case of a *pro se* claimant, where the ALJ has a "heightened duty of care and responsibility." *Crider v. Harris*, 624 F.2d 15, 16 (4th Cir. 1980). Although a claimant has a duty to diligently supply medical records to the SSA documenting the claimant's impairments and limitations, the ALJ bears the responsibility of developing the claimant's "complete medical history." 20 C.F.R. §§ 404.1740(b), 416.912(d); *see Smith v. Barnhart*, 395 F. Supp. 2d 298, 302 (E.D.N.C. 2005). However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). "There is scant authority in this circuit to provide this court guidance in determining when the administrative record is so 'inadequate' as to trigger the ALJ's heightened duty to inquire into those deficiencies and, if necessary, supplement the record before rendering a decision." *Smith*, 395 F. Supp. 2d at 302. However, the decision of an ALJ will not be overturned for failure to fully and fairly develop the record unless "such failure is prejudicial to the claimant." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980) (citations omitted). "To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (internal quotation & citation omitted); *see also Marsh*, 632 F.2d at 300 (noting that evidentiary gaps that result in unfairness or clear prejudice require a remand); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) (explaining prejudice results where the ALJ's decision "might reasonably have been different had that evidence been before him when his decision was rendered").

Here, Claimant contends the record was inadequate because the ALJ did not obtain Claimant's hospital records from October 2009 and also failed to obtain updated medical records

10

from the four-month period between hearings. Specifically, Claimant contends the ALJ failed to update records of her monthly meetings with her psychiatrist and failed to obtain records detailing her physical condition during those intervening months. Pl.'s Mem. at 7. The court's review of the record indicates the following: (1) the hearing on October 20, 2009 was continued because the record only included medical records through 2008 (R. 68); (2) Claimant submitted additional records at the hearing on October 20, 2009 (R. 68); (3) Claimant was informed at the October 20, 2009 hearing that she was to mail in additional records (R. 68-69); (4) the record on which the ALJ rendered a decision includes records from September 2006 through September 2009 (R. 265-650); (5) the record before the ALJ did not include the October 2009 hospitalization records; (6) the October 2009 hospitalization records were added to the record by the Appeals Council (R. 7, 651-655); (7) no other medical records were added by either the Claimant or the ALJ reflecting the intervening period between the October 2009 hearing and February 2010 hearing.

The court first addresses the absence of the October 2009 hospital records. Despite medical records from Claimant's October 2009 hospitalization not being included in the record before the ALJ, the ALJ asked Claimant questions regarding her hospitalization including the cause of her hospitalization, the length of her stay, and the treatment she received. (R. 46-47). Claimant testified at the hearing that she has hospitalized in October 2009 for "suicidal thoughts again" for a period of a week and that her anti-depressant medication was changed while at the hospital. *Id.* The Appeals Council indicated that review of the October 2009 hospital records did not "provide a basis for changing the [ALJ's] decision" because the evidence "is cumulative" of other medical evidence.[4]

---

[4]    Although the hospital records were not included in the record before the ALJ, the hospital records were incorporated into the administrative record by the Appeals Council and this court reviews the record as a whole. *See Wilkins v. Sec., Dep't of Health & Human Servs.*, 953 F.2d 93,

11

(R. 2). Even though the ALJ certainly could have included these hospital records in the record prior to his decision, there is no indication that there was an inadequate record without inclusion of said records. The records do not show new or material information different from what is already in the record.

Next, there is an evidentiary gap in Claimant's medical records from late 2009 to the date of the administrative hearing in February 2010. Claimant has attached to her memorandum medical records from this period. Pl.'s Mem. Exs. B & C [DE-26-2, -3]. Assuming, *arguendo*, that the record was inadequate without these various medical records and that the ALJ therefore failed to fully develop the record, Claimant points to no unfairness or prejudice warranting remand. The medical records provided by Claimant indicate treatment dates by her primary care physician on November 25, 2009 and January 8, 2010 and a treatment record from Lenoir Orthopedics on February 8, 2010. *Id.* The records from her primary physician do not indicate new or deteriorating conditions to demonstrate that the omission of these records prejudiced Claimant. In fact, these records indicate the presence of the same conditions documented in the medical evidence within the administrative record – that of depression, migraines, fatigue, fibromyalgia and chronic pain. Pl.'s Mem. Ex. B [DE-26-2] at 1, 5. The primary care records both indicate that Claimant's mood was not anxious and not depressed. *Id.* at 2, 7. Further, the record from the orthopedic office notes that Claimant had pain in her right hip, but that the pain was dull and aching and rated at a level "2." Pl.'s Mem. Ex. C [DE-26-3] at 1. The record indicates there is "no real compromise" in the joint space. *Id.* at 2. Even considering both of the record omissions, Claimant has not provided a factual foundation upon which the court can perceive a gap in the evidentiary record that is prejudicial to

_____

96 (4th Cir. 1991).

Claimant. Accordingly, Claimant's argument is without merit.

## II. The ALJ's credibility finding is supported by substantial evidence.

Claimant contends the ALJ's credibility finding is not supported by substantial evidence. Pl.'s Mem. at 7. Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Craig*, 76 F.3d at 594; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *Craig*, 76 F.3d at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL

13

374186, at \*3. By all accounts, the ALJ conducted the two-step inquiry by first determining that Claimant's medically determinable impairments could reasonably have been expected to cause her alleged symptoms, and then determining that her statements concerning intensity, persistence, and limiting effects of her symptoms were not credible. Claimant contends the ALJ committed numerous errors in determining that she was not credible. This court examines each contention in turn.

First, Claimant contends that the ALJ's citation to her daily activities is not substantial evidence to support the ALJ's credibility determination because the statements are "incorrectly excepted statements from a summary provided . . . by a non-treating, non-examining doctor related solely to mental impairments." Pl.'s Mem. at 10. While the ALJ cited these activities of daily living from a state examiner's summary report, those activities, as summarized, are reflected in other portions of the record as statements or responses originating from Claimant. (R. 201-208). For instance, Claimant testified at the hearing that she was able to clean her home and cook meals for herself in addition to driving to doctor's appointments and to run errands. (R. 41-42, 45-46). The ALJ's explanation of Claimant's daily activities is highly relevant to a credibility determination based on the factors the ALJ is to consider as listed in SSR 96-7p. The fact that the report where the ALJ cited the daily activities included other statements about Claimant's limitations does not detract from those daily activities constituting substantial evidence. The ALJ's RFC determination limiting Claimant to simple, routine, repetitive tasks in a low-stress environment with limited interpersonal demands matches the limitations included in this report thereby showing the ALJ gave consideration to the entire report, including the limitations that Claimant contends outweigh the value of the daily activities. Therefore, Claimant's attempt to show that the daily activities listed by the ALJ, in

14

support of his credibility finding, are inaccurate is without merit.

Claimant also contends briefly that the listing of daily activities from this report is inappropriate because the scope of the report was limited to Claimant's mental health allegations. Pl.'s Mem. at 9. The context in which Claimant's daily activities were evaluated does not detract from their veracity or truth. It is immaterial that those daily activities appeared in a psychiatric assessment as opposed to a physical evaluation. Despite Claimant's arguments, the ALJ obviously deemed Claimant's testimony credible to a certain degree in light of his finding that Claimant is only capable of performing light work with several limitations regarding interaction with other individuals in the work place.

Claimant next contends the ALJ erred in his credibility determination by only citing evidence in the record dated November 2008 and earlier, specifically in regards to the ALJ's statement that Claimant was not compliant in taking her prescribed medications. Pl.'s Mem. at 10. The court finds that Claimant's argument is without merit as the ALJ is permitted to consider all the evidence that is presented and is not limited to only considering evidence immediately prior to the administrative hearing as Claimant would suggest. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Claimant alleges disability beginning June 30, 2007. (R. 16). Therefore, consideration of evidence in the years 2007 and 2008 is acceptable and permitted. The court's review of the objective medical evidence from 2009, which admittedly the ALJ cited minimally, does not indicate the ALJ impermissibly omitted evidence to prevent his credibility finding from being supported by substantial evidence. The objective medical evidence from 2009 does not indicate limitations or conditions exceedingly different from the cited medical evidence. (R. 623-633). Claimant also briefly contends that the ALJ failed in mentioning the ME's testimony which found Claimant to be

15

credible. Pl.'s Mem. at 11. However, a review of the hearing transcript indicates that the ME did not make a finding as to Claimant's credibility, but merely discussed her limitations with respect to her impairments. (R. 56-57). It is not clear from Claimant's brief how Claimant attributes error with this contention because it is not this court's role to re-weigh the evidence. *See Mastro*, 270 F.3d at 176.

Last, Claimant contends that the ALJ failed to properly address Claimant's allegations of pain with respect to her fibromyalgia in his credibility determination. Pl.'s Mem. at 11. In his opinion, the ALJ specifically noted that Claimant complained of joint pains and muscle aches from her fibromyalgia. (R. 20). However, the ALJ cited objective medical evidence from Dr. Atilla at Eastern Carolina Physicians which stated that Claimant had full 5/5 strength of her extremities with no cyanosis, clubbing, or edema; no neurological deficits; and minimum to no difficulty walking on her heels and toes or tandem walking. (R. 20, 609, 616). Present in other treatment notes by Dr. Atilla, though not cited by the ALJ, is the notation that Claimant has full range of motion in her extremities and spine with no point tenderness in Claimant's spine, despite Claimant's complaint that her pain is located in the spine, both shoulders, and both hands. (R. 586, 589, 591). Also, Claimant stated that her "joint pain is relieved by analgesics." (R. 591). Claimant contends that the ALJ failed to take note of the fact that Claimant takes narcotic pain medication on a regular basis, that her medications have been increased at points to control pain, that she regularly receives treatment for her fibromyalgia, and consistently reports experiencing pain. Pl.'s Mem. at 11. While the ALJ may not have cited every piece of objective medical evidence relating to Claimant's fibromyalgia pain, the record does not support the conclusion that the ALJ failed to address such pain. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid

16

requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (noting the ALJ need not discuss every piece of evidence in making a credibility determination). Claimant's argument is essentially contesting the manner in which the ALJ weighed the objective medical evidence concerning Claimant's reported pain. The very same medical records that Claimant cites for the proposition that the ALJ failed to take account of certain evidence regarding Claimant's pain are the same records the ALJ cites regarding Claimant's alleged pain. Thus, the ALJ explicitly considered Claimant's allegations of pain, but found that Claimant's pain was not disabling as alleged. The court will not endeavor to re-weigh evidence, but only determine whether substantial evidence supports the ALJ's determination, which it does.

It is within the ALJ's province to determine credibility and, in fulfilling that function, the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence of record. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). To the extent that the ALJ detailed the relevant facts underlying his finding that Claimant's testimony was not fully credible, his credibility finding is entitled to substantial deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (noting an ALJ's observations regarding credibility should be given great weight). Here, the ALJ comported fully with the credibility evaluation prescribed by SSR 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. While Claimant may disagree with the manner in which the ALJ took account of this evidence, this court cannot re-weigh the evidence. *See Mastro*, 270 F.3d at 176. For the foregoing reasons, Claimant's

17

argument as to this issue is without merit.

### III. The ALJ asked the VE a proper hypothetical question.

Claimant contends that the ALJ's determination that Claimant is not disabled cannot stand because the relevance of the VE's testimony cannot be determined due to inaudible portions of the ALJ's hypotheticals. Pl.'s Mem. at 4-5. This court disagrees.

The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *see also* 20 C.F.R. §§ 404.1566(e), 416.966(e). In order for a vocational expert's opinion to be relevant or helpful, "it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992). The corollary to this rule is that the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) (holding a hypothetical valid because it adequately reflected claimant's characteristics as found by the ALJ). If the ALJ does not believe that a claimant suffers from one or more claimed impairments, and substantial evidence supports that conclusion, then the ALJ does not err if he fails to include those impairments in his questioning of the VE. *McPherson v. Astrue*, 605 F. Supp. 2d 744, 761 (S.D. W. Va. 2009) ("The ALJ is under no duty to present the VE with hypothetical questions that include [claimant's] claimed impairments if the ALJ has found those impairments to be not severe or not credible."); *Sobania v. Sec'y, Health & Human Servs.*, 879 F.2d 441 (8th Cir. 1989) (explaining "the hypothetical is sufficient if it sets forth the impairments which are accepted as true

18

by the ALJ").

Here, Claimant's primary contention is that the second hypothetical posed to the VE relating to light work is inaudible in the transcript thereby making the VE's testimony not relevant because there is "no way to tell what additional limitations [the ALJ] listed . . . [and] whether or not they match the additional limitations [the ALJ] gave as part of the RFC decision." Pl.'s Mem. at 5. However, a review of the transcript indicates that the ALJ communicated the same limitations contained in the RFC to the vocational expert despite the inaudible portion of the question. The relevant portion of the transcript reads as follows:

> ALJ: And what if I were to assume that this hypothetical individual, strength-wise, was confined to medium work. With the additional limitations that any jobs that she would be capable of doing, [INAUDIBLE] simple tasks; have to be a low-stress type of position, where she generally was – could be left alone and work by herself, but she didn't have routine work or worked in – closely with others, and in a situation where generally reported to one supervisor, rather than multiple [INAUDIBLE] supervisors.
>
> Based on that [INAUDIBLE], why don't [INAUDIBLE] jobs in your opinion [INAUDIBLE]?
>
> VE: Yes, Your Honor. Some examples would include cleaning positions at the unskilled, medium level; DOT number 323.687-010; approximately 77,000 nationally; approximately 2,400 in North Carolina.
>
> A second example, Your Honor, would be a supply worker; 319.687-010; approximately 284,000 nationally; approximately 5,700 in North Carolina. And a third --
>
> ALJ: Did you – did you give the number [INAUDIBLE]?
>
> VE: Yes, sir.
>
> ALJ: – okay. [INAUDIBLE]. That's all right. [INAUDIBLE] --
>
> VE: – I'd be glad to [INAUDIBLE] --
>
> ALJ: – no, no. That's fine.

19

VE: Okay. The third example, Your Honor, would be a hand packer; 920.587-018; approximately 64,000 nationally; approximately 2,300 in North Carolina. Those are all unskilled and medium, and are representative and not exhaustive, Your Honor, and are consistent with the DOT.

ALJ: Well, let me change the hypothetical. What if I concluded that Ms. Nelson was only capable of light work [INAUDIBLE].

VE: Yes, Your Honor. Again, there are cleaning positions at the unskilled, light level; 323.687-014; approximately 244,000 nationally; approximately 8,000 in North Carolina. Another example, Your Honor would be assembly, also at the unskilled, light level; 701.687-010.

I'm going to reduce the numbers, Your Honor. Some positions are at productions rate and some are not, so – approximately 140,00 nationally; approximately 1,400 in North Carolina.

. . .

VE: All right. And what if I were to assume that Ms. – let me the hypo. What if I were to assume that Ms. Nelson was only capable of sedentary work, would there be jobs [INAUDIBLE] – with the same additional limitations that I [INAUDIBLE]?

(R. 61-62) (emphasis added). There is no indication in the record that during the hearing

anyone was unable to hear or understand the hypothetical questions posed by the ALJ. (R. 61-62).

In his opinion, the ALJ found Claimant retained the RFC to perform light work as defined

in 20 C.F.R. §§ 404.1567(b) and 416.967(b), provided she only perform simple, routine, repetitive

tasks, have low-stress work, no team work, generally be left alone to work by herself and report to

only one supervisor. (R. 19). When this RFC finding is read alongside the hearing transcript, it is

clear that the hypothetical question that the ALJ posed to the VE posits that Plaintiff is restricted to

light work with the same limitations listed in the prior hypothetical regarding medium work, and

ultimately included in the ALJ's RFC finding as stated above. Enough of the exchange between the

ALJ and the VE is included in the transcript to determine that the ALJ properly asked a hypothetical

question to the VE reflecting Claimant's RFC. The transcript indicates that the ALJ merely changed

20

the hypothetical question from medium work to light work and included the same limitations as specified in the medium work hypothetical.

Further, the ALJ states in his opinion that he asked the VE a hypothetical that included the Claimant's RFC and stated the VE's response which matches the response in the hearing transcript. (R. 23). Based on these observations, the VE's testimony is relevant and useful. Accordingly, there is no merit to Claimant's claim that the VE's testimony is not relevant and unable to support the ALJ's finding at step five, nor is there any need to order remand to clarify the transcript. *See Williams v. Barnhart*, 289 F.3d 556, 557-58 (8th Cir. 2002) (holding that the court should not remand a case based on inaudible portions of the record unless there is an indication that the missing portion of the transcript would bolster arguments upon review); *Johnson v. Astrue*, No. 2:08-CV-51, 2009 WL 413299, at *27 (N.D. W. Va. Feb. 18, 2009) (holding plaintiff has not met the burden to show the materiality of the omitted portions of the VE testimony).

## IV. The ALJ's use of the ME does not warrant remand.

Claimant next cites the Hearings, Appeals and Litigation Law Manual ("HALLEX"), specifically HALLEX I-2-6-70, for the proposition that the ALJ incorrectly allowed the ME to question the Claimant at the February 2010 administrative hearing and improperly allowed the ME to testify on areas beyond his expertise. Pl.'s Mem. at 11; Pl.'s Mem. Ex. D [DE-26-4]. Claimant contends that the ALJ's failure to follow the HALLEX requirements at the hearing requires the court to remand for a new hearing. Pl.'s Mem. at 12.

The court rejects Claimant's argument that any failure by the ALJ to comply with HALLEX I-2-6-70 requires the action be remanded. HALLEX is an internal guidance tool that defines procedures for adjudicating claims at the hearing level. *See Way v. Astrue*, 789 F. Supp. 2d 652, 663

21

n.1 (D.S.C. 2011). At present, there is a circuit split as to whether HALLEX is controlling authority. *Id.* at 665 (citing *Moore v. Apfel*, 216 F.3d 864 (9th Cir. 2000) (holding HALLEX is not binding) & *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000) (holding that HALLEX does not have the force of law, but remand is appropriate if the failure to follow it causes prejudice)). The Fourth Circuit has not addressed whether HALLEX has the force of law, however, this District has directly considered the issue and held that HALLEX is merely an internal guidance tool lacking the force of law. *Melvin v. Astrue*, 602 F. Supp. 2d 694, 704 (E.D.N.C. 2009) (holding HALLEX is not binding and the court will not consider it as grounds for remand) (citing *Moore*, 216 F.3d at 868-69 & *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (holding policy statements of agencies do not carry the force of law)). Given that HALLEX is not binding, this court rejects Claimant's argument that any failure by the ALJ to comply with HALLEX requires remand. For the foregoing reason, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-25] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-29] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

22

Submitted, this the 2nd day of August, 2013.

Robert B. Jones, Jr.
United States Magistrate Judge

23